# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY L. SHORT, | CASE NO. 1:09-cv-00996-OWW-GSA PC |
| Plaintiff, | ORDER REQUIRING PLAINTIFF TO EITHER FILE SECOND AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE |
| v. | |
| JOHN SANZBERRO, et al., | |
| Defendants. | (Doc. 14) |
| | THIRTY-DAY DEADLINE |

**Screening Order**

**I.   Screening Requirement**

Plaintiff Rodney L. Short, a civil detainee proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. §§ 1983 and 1985 on June 9, 2009. Plaintiff filed an amended complaint as a matter of right on August 20, 2009. Fed. R. Civ. P. 15(a).

The in forma pauperis statutes provides that "the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681

(9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusion are not. Iqbal, 129 S.Ct. at 1949.

Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal at 1949-50; Moss at 969.

## II. Summary of Plaintiff's Allegations

### A. First Incident

Plaintiff is a civil detainee at Coalinga State Hospital (CSH). On April 29, 2009, Plaintiff and Defendant Sanzberro, who was the unit supervisor, engaged in a verbal altercation regarding another detainee's loud music and Sanzberro's decision to reprimand Plaintiff's roommate for yelling about the loud music rather than either tell the other detainee to turn down the music or return the other detainee's confiscated headphones so that he could listen to his music privately. After Sanzberro told Plaintiff he was not going to talk to Plaintiff about the issue, Plaintiff kicked over a trash can, told Sanzberro to talk about that, and returned to his room, where he laid down on his bed.

Defendant Sanzberro, and Defendants Grijalva and Kowall, both of whom were psychiatric technicians, immediately followed Plaintiff, and Grijalva told Plaintiff he was going to isolation. Plaintiff protested that patients do not go to isolation for kicking a trash can, and Sanzberro and Grijalva each grabbed one of Plaintiff's arms and pulled him out of bed. Kowall then grabbed Plaintiff and all three wrestled Plaintiff to the ground and placed him in mechanical restraints. Grijalva grabbed, twisted, and pulled back Plaintiff's left pinky finger, trying to break it intentionally. An eyewitness yelled at Grijalva to stop and he let go of Plaintiff's finger. Plaintiff was then taken to isolation by force.

Defendants Sanzberro, Grijalva, and Kowall, and Defendant Roggencamp, who was a registered nurse, subsequently came to isolation and asked Plaintiff if he would "take this shot," meaning psychotropic drugs administered via injection. (Doc. 14, Amend. Comp., ¶38.) Plaintiff

refused and told Defendants they could not forcibly medicate him. Defendants then held Plaintiff down, pulled his pants down, and injected him in the buttock with five milligrams of Haldol and two milligrams of Ativan.

Plaintiff thereafter began to practice Tae Bo, which he practiced every day at noon. Defendant Gill, a physician, observed Plaintiff practicing Tae Bo and declared him to be having a manic episode, which led to the order that Plaintiff be injected with more antipsychotic drugs. No defendants or other staff members informed Gill that Plaintiff practiced Tae Bo every day, and Plaintiff was injected with drugs in his right buttock.

At 12:55 p.m., Sanzberro, Grijalva, Kowall, and Roggencamp came to isolation and injected Plaintiff with ten milligrams of Zyprexa along with sterile water. At 3:55 p.m., Sanzberro, Grijalva, Kowall, and Roggencamp returned again and injected Plaintiff with ten milligrams of Zyprexa and two milligrams of Ativan. Plaintiff remembers leaving isolation for the dining room that evening. When Plaintiff awoke the next morning, he was sitting on the floor next to his bed with a plate of rice on the right side of his head, a plate of rice on the left side of his head, and a plate of rice under his head.

Plaintiff was told that he was forbidden from attending yoga class, and that he was on "Q15," which means an eye contact check with staff every fifteen minutes around the clock, although he was not checked every fifteen minutes.

Plaintiff went to his yoga class, and when he arrived, he was told he would be physically removed if he did not leave. Plaintiff was taken back to his unit by Grijalva, who told Plaintiff that he had to talk to Gill or else he would remain on Q15. Plaintiff spoke with Gill, but only remembers that Gill removed him from Q15. It took another three days for the medication to wear off to the point Plaintiff was functional, but three weeks later, the medication had still not fully worn off. Plaintiff alleges he remains fearful at times due to being forcibly medicated.

///

///

///

///

B.   **Second Incident**

On June 27, 2009, Plaintiff was in the dayroom doing homework when he was approached by Kindy, a psychiatric technician, who asked for permission to search Plaintiff's bed area.[1] Plaintiff granted permission, and proceeded to his bed area with Kindy. They were followed by four other staff members including Roggencamp. Plaintiff removed a bowl from underneath his bed and set it to the side, told staff to conduct their search, and returned to the dayroom.

Defendants Grijalva and Roggencamp, and Kindy, came to the dayroom and told Plaintiff to go to the interview room for a strip search. Plaintiff refused and when he inquired why he was being ordered to submit to the search, Grijalva told him that Roggencamp had seen him put something in his pants. Plaintiff stated he was not wearing pants with pockets. Grijalva told Plaintiff they were going to the interview room to search him, and Plaintiff announced to the people in the dayroom that he wanted witnesses to the strip search and that if they put their hands on him, he was going to protect himself.

Plaintiff, Grijalva, and Roggencamp argued for three or four minutes, with Plaintiff refusing to be strip searched. An employee activated the alarm and Departmental Police Services (DPS) officers arrived and observed. Grijalva told Plaintiff he was going to go to isolation to be strip searched, and Plaintiff warned him that if he put his hands on Plaintiff, Plaintiff was going to defend himself. Grijalva grabbed Plaintiff's wrist and pulled, and Plaintiff struck Grijalva in the chin with his right hand. Plaintiff was thereafter subdued, placed in isolation, and strip searched, where nothing was found on him. Plaintiff's vital signs were taken twenty minutes later, and thirty minutes thereafter he was released from isolation.

On June 29, 2009, two DPS investigators and two DPS officers arrived, searched Plaintiff, and placed Plaintiff in the isolation room. Plaintiff was read his Miranda rights and he invoked his right to an attorney. Plaintiff was taken to the interview room for forty-five minutes and then returned to isolation. On July 2, 2009, Plaintiff was placed under arrest and taken to the Fresno County Jail.

---

[1] Kindy is not named as a defendant in this action.

4

Plaintiff later learned he was charged with three counts of assault and three counts of inciting, but the District Attorney's Office declined to file charges. Plaintiff was released from jail on July 8, 2009, and returned to CSH. Plaintiff was transferred to a different unit and was permitted to retrieve his property the next day, where he discovered that some of his property was missing or destroyed.

### III.     Plaintiff's Legal Claims

#### A.     Excessive Force Claim

Plaintiff alleges the use of excessive physical force against him. The Due Process Clause of the Fourteenth Amendment protects Plaintiff "from the use of excessive force that amounts to punishment," Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1197 (9th Cir. 2002) (citation omitted), while the Fourth Amendment sets the applicable constitutional limitations for considering such claims, id. (internal quotations and citation omitted). Claims are analyzed under the objective reasonableness standard, which requires an evaluation of "'whether officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" Lolli v. County of Orange, 351 F.3d 410, 415 (9th Cir. 2003) (quoting Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865 (1989)).

Plaintiff's allegations are sufficient to state a claim against Defendants Sanzberro, Grijalva, and Roggencamp arising from the incident on April 29, 2009.

#### B.     Involuntary Administration of Medication

Detainees have a substantial liberty interest, grounded in the Due Process Clause, in avoiding the involuntary administration of antipsychotic medication. Washington v. Harper, 494 U.S. 210, 229, 110 S.Ct. 1028 (1990). Plaintiff's allegations state a claim under section 1983 against Defendants Sanzberro, Grijalva, Kowall, Roggencamp, and Gill for forcibly medicating Plaintiff.

#### C.     Strip Search

Detainees are protected from unreasonable searches and seizures by the Fourth Amendment. Detainees in an institutional setting are subject to searches as long as they are reasonable, "which 'requires a balancing the need for the particular search against the invasion of personal rights that the search entails.'" Byrd v. Maricopa County Sheriff's Dep't, 565 F.3d 1205, 1220 (9th Cir. 2009)

(quoting Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861 (1979)); Bull v. City and County of San Francisco, 539 F.3d 1193, 1197 (9th Cir. 2008).

Plaintiff's allegations are sufficient at the pleading stage to support a Fourth Amendment claim for an unconstitutional search on June 27, 2009. However, Plaintiff does not identify which defendants actually conducted the strip search, a deficiency which causes Plaintiff's claim to fail. Iqbal, 129 S.Ct. at 1949-50.

### D. Denial of Equal Protection

Plaintiff alleges that his rights under the Equal Protection Clause were violated when he was forcibly medicated, and when Defendants Grijalva and Roggencamp assaulted him in retaliation for initiating this law suit.

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249 (1985). An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, see e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir. 2004); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002). A plaintiff must allege sufficient facts either showing intentional unlawful discrimination or "that are at least susceptible of an inference of discriminatory intent." Byrd, 565 F.3d at 1212 (internal quotations and citation omitted); Iqbal, 129 S.Ct. at 1949-50.

In this instance, Plaintiff's amended complaint is devoid of any factual allegations supporting the claim that he was intentionally discriminated against by any of the defendants. Accordingly, Plaintiff fails to state a claim for relief. Byrd at 1212; Iqbal at 1949-50.

### E. Conspiracy Claims

Plaintiff alleges that he was the victim of a conspiracy to violate his rights under sections 1983 and 1985.

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting

of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

To state a claim under section 1985(3), a plaintiff allege sufficient facts showing "a deprivation of a right motived by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions.'" RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1056 (9th Cir. 2002) (quoting Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992)). "'The conspiracy . . . must aim at a deprivation of the equal enjoyment of rights secured by the law to all.'" Orin v. Barclay, 272 F.3d 1207, 1217 (9th Cir. 2001) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790 (1971)) (emphasis omitted). A claim for violation of section 1985(3) requires the existence of a conspiracy and an act in furtherance of the conspiracy. Holgate v. Baldwin, 425 F.3d 671, 676 (9th Cir. 2005) (citing Sever, 978 F.2d at 1536). A mere allegation of conspiracy is insufficient to state a claim. Id. at 676-77.

Plaintiff's amended complaint sets forth no facts supporting his conclusory assertion that the defendants engaged in a conspiracy to violate his rights, and he therefore fails to state any conspiracy claims. Iqbal at 1949-50.

**F.    Retaliation Claim**

Finally, Plaintiff alleges that Defendants Grijalva and Roggencamp assaulted him on June 27, 2009, in retaliation for filing this action.

Civil detainees are protected from retaliation by the First Amendment. A viable retaliation claim entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that [detainee's] protected conduct, and that such action (4) chilled the [detainee's] exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate [governmental] goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff's amended complaint contains no allegations supporting the claim that Grijalva and Roggencamp acted as they did on June 27, 2009, because Plaintiff filed this suit. Plaintiff must allege some specific facts in support of his claim, and the bare assertion that he was retaliated against falls well short of supporting the claim that adverse action which did not reasonably advance a legitimate governmental goal was taken against him because of his exercise of his First Amendment rights. Iqbal at 1949-50. Accordingly, the Court finds Plaintiff fails to state a claim for retaliation.

**IV.     Conclusion and Order**

Plaintiff's amended complaint states a cognizable excessive force claim against Defendants Sanzberro, Grijalva, and Roggencamp arising from the April 29, 2009, incident, and a cognizable due process claim against Defendants Sanzberro, Grijalva, Kowall, Roggencamp, and Gill for forcibly medicating Plaintiff. However, Plaintiff's allegations do not support any other claims for relief. The Court will provide Plaintiff with the opportunity to file a second amended complaint curing the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

If Plaintiff does not wish to file a second amended complaint and is agreeable to proceeding only on the claims found to be cognizable in this order, Plaintiff may so notify the Court in writing, and his other claims will be dismissed for failure to state a claim. Plaintiff will then be provided with five summonses and five USM-285 forms for completion and return. Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process on Defendants Sanzberro, Grijalva, Kowall, Roggencamp, and Gill.

If Plaintiff opts to amend, his amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal at 1948-49; Jones, 297 F.3d at 934. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.

Therefore, "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;

2. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

   a. File a second amended complaint curing the deficiencies identified by the Court in this order, or

   b. Notify the Court in writing that he does not wish to file a second amended complaint and is willing to proceed only against the claims identified as cognizable in this order, and

3. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated:   **December 18, 2009**           /s/ **Gary S. Austin**
                                     UNITED STATES MAGISTRATE JUDGE